SPANGENBERG<br>*v.*<br>BIGELOW.

*Appeal dismissed.*

## ROBERTS, for the use of the Trustees of the Bank of the United States *v.* STARK et al.

Section 7 of the act of the Mississippi legislature of 21st February, 1840, which declares, that it shall not be lawful for any bank in that State to transfer, by endorsement or otherwise, any note, bill receivable, or other evidence of debt, was intended solely for the benefit of the debtors of those banks; and the privilege which it conferred on them, of paying the banks in their own notes, might be waived by the debtors. The transfer of the notes does not place a party claiming under it, in the position of one to whom courts can give no assistance in enforcing his contract, as in case of a plaintiff seeking to enforce an immoral or unlawful contract.

In an action on a written obligation payable in the notes of a particular bank, judgment will be rendered for the sum mentioned in the obligation, reserving to the defendant the right to discharge it in notes of the bank designated in the instrument; and not for the value of the sum for which the obligation was executed, in the notes of the bank at their actual value at the time of the breach of the contract by the debtor.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. The facts of the case are stated in the opinion of the court *infrá*.

*Bradford* and *T. A. Clarke*, for the plaintiff. The true consideration of the new notes of the defendant, arose out of the agreement in pursuance of which they were executed. The proper test of the transaction between the plaintiff and the Planters' Bank is, to enquire what were the rights thereby acquired to the plaintiff? After he had obtained possession of the notes of Stark, did he hold them as transferree, with the right to sue upon and collect them, or were they extinguished in his hands? There can be no difficulty in the answer to this question. The plaintiff acquired no right of action upon the notes. His action must have been upon his agreement with the defendant. The notes were extinguished and discharged by his settlement with the bank. If this view of the subject be correct, the act of 1840 has no application to this case. It prohibited the bank from transferring the notes of the defendant, but not from receiving payment of them.

The act of 1840 was unconstitutional, because it violated that clause of the 10th section of the first article of the constitution of the United States, which prohibits a State from passing a law impairing the obligation of contracts; and also violated a similar provision contained in the latter clause of the 18th section of the 1st article of the constitution of the State of Mississippi.

The object of the act of 1840, was to enable the debtors of the banks, under all circumstances, to pay their debts in the notes of the banks. The act therefore prohibited all transfer of the notes, bills receivable, and other evidences of debt held by the banks; and annexed, as the penalty for the violation of the act, that the action of the assignee on such instruments should abate on the plea of the defendant. This penalty was provided for the sole benefit of the debtors of the banks, and gave them a right to have such actions abated, or not, at their discretion. Such is the result of the decision of the courts of Mississippi. See *Planters' Bank* v. *Sharp et al.*, 4 Smedes and Marshall, 17. *Hazlip* v. *Leggett*, 6 Ibid. 331. *Lanier* v. *Trigg*, 6 Ibid. 641. *Bank of Columbus* v. *Thompson*, 7 Ibid. 443. *Roben* v. *Benton & Manchester Co.* 7 Ibid. 724. The debtor who desires to avail himself of the act, must do so in the mode pointed out by it. The act does not enjoin it upon the debtor to plead in abatement. It gives him a right, which he may exercise, or which he may waive. He may avoid the transfer of the claim against him, or he may ratify

ROBERTS.
v.
STARK.

it, at his option. His ratification may be either expressed or implied—any act by which the transferree is recognised as the creditor, amounts to a ratification. In this case Stark, it is averred, novated his debt, in favor of the transferee. The novation was made on longer *credit*, and different terms of payment. There could be no more effectual ratification of the transfer. It was a ratification for a good and valuable consideration. The original notes were discharged and extinguished by *novation*, and there was a good and sufficient consideration for the new notes. The action of the plaintiff on the new notes, comes neither within the letter nor spirit of the statute.

Finally, the defendant insists that the judgment is erroneous, because the notes were payable in the notes of the Bank of the United States; whereas the judgment is rendered for money or notes of the Bank of the United States. In support of this objection he has referred to various authorities, to show what remedy could be had on such notes in the State of Mississippi. It is believed that there can be no question as to the proper meaning of the contract between the parties in this case. The obligation was for money, payable in the notes of the Bank of the United States. It was an alternative obligation, which the debtor might discharge in specie, or in notes, at his option. *Rankin* v. *Saunders*, 6 Howard, 52. *Brooks* v. *Hubbard*, 3 Cowen, 58. *Gleason* v. *Pinncy*, 5 Wendall, 393. Sedgwick on Damages, 242, 281, 282. It cannot be doubted, that a tender of either specie or notes, at the maturity of the notes, would have been a good tender. In the default of the debtor, perhaps the only remedy of the creditor, in the State of Mississippi, would be an action for damages to be determined, and the value of the bank notes in specie, at the maturity of the notes. Certainly no such judgment as the one rendered in this case could have been obtained in the courts of law. But the form and character of the remedy which the creditor may have, is determined by the law of the *forum*. The judgment in this case, whatever might be thought of it in Mississippi, is one which is entirely competent to the courts of Louisiana to render. It pursues the contract, and adjudges the debtor to the specific performance of it. It requires the defendant to do exactly what he agreed to do. He is ordered to pay his debt in money, with the privilege however of discharging it in notes, according to his contract.

*Moise* and *W. M. Randolph*, for the appellant. 1st. The assignment of the original notes to *Roberts*, was null and void. He took nothing by the transfer, and never could have maintained an action for the amount. Stat. of Mississippi of 21st February, 1840, s. 7. The constitutionality of this act is settled. See *Hyde* v. *Planters' Bank*, 5 Rob. 416. *Williams* v. *Planters' Bank*, 12 Rob. 125. *Marsh all* v. *Grand Gulf Railroad Co.*, 11 Rob. 190. *Green* v. *Baldwin*, 11 Smedes and Marshall, 661. The legislature of Mississippi, by declaring that "it shall not be lawful for the banks to assign their notes, bills receivable, &c., meant to attach nullity to the act of transfer itself. *Roberts* took nothing by the assignment of *Stark's* notes, and could not have maintained an action on them. No action can be maintained on a contract made in fraud of the law. *Law* v. *Hodson*, 11 East, 300. *Bravo* v. *Turner*, 7 Term Rep. 630. *Wheeler* v. *Russell*, 17 Mass. 280. *Cotton* v. *Brien*, 6 Rob. 115. *Booth* v. *Hodgson*, 6 Term Rep. 409. *Mitchell* v. *Smith*. See also, 1 Binney, 117. 6 Binney, 329. 3 Merivale, 471. 5 Mass. 239. 2nd. The notes given in renewal are subject to the same defences which might have been made to the original notes. 8 Mart. 422. 5 Mart. N. S. 157. 5 Rob. 498. 6 Rob. 115. *Davis* v. *Holbrook*, 1 Ann. Rep. 176. *Armstrong* v. *Toler*, 11 Wheaton, 258. 3d. The judgment rendered is erroneous, because the notes are on their face "payable in notes of the Bank of the United States," and the judgment is for money or notes of the United States Bank; whereas the true criterion of indebtedness was the value of the notes of the United States Bank at the maturity of the obligation sued on, and there is no allegation or proof of such value. Suppose the defendant does not pay in the notes of the United States Bank —suppose those notes are not to be had at this time—is the execution good for the same amount of specie? Clearly not. If the United States Bank's notes, were below par, an alternative judgment that *Stark* should pay in those notes or in funds at par value, would be to impose a penalty. Now, the true indebtedness of *Stark* is, the value of United States Bank paper at the maturity of the obligation sued on. A. promised to pay B, $800 in such bank notes as are received in deposit in the "Hopkinsville Branch Bank. By the court:

evidence of the specie value of such paper ought to be admitted, and that value is the criterion of damages. Littell's Rep. vol. 3, 245. *Anderson* v. *Ewing*. See *Burnalane & Co.* v. *Gentrys*, 7 Munroe, 354. A. sued B. in an action of debt, to recover a certain amount payable in Philadelphia funds. But the court held that "debt" was not the proper action. "The legal acceptation of "debt" is, "a sum of money due by certain and express agreement, where the quantity is fixed and specific, and does not depend on any subsequent valuation to settle it"—citing 3 Blackstone p. 153. By the court: The thing contracted for is not specifically recoverable. The plaintiff might, in an appropriate action, recover the value of Philadelphia funds, in damages, and a jury in their discretion might, in addition to that value, give them interest on that value; but they cannot, in any form of action known to law, recover Philadelphia funds specifically." *January* v. *Henry*, 2 Munroe's Rep. 58. Directly in point is the case of *Gordon* v. *Parker*. The case was this: "$5,000. Due *George S. Smith*, or bearer, five thousand dollars, payable in Brandon money. Jackson, January 26th, 1839." By the court: "The contract was, to pay in a certain species of bank notes, and their value at the time of the due bill, should have been ascertained by the assessment of the jury as the measure of damages." The court reasserted the principle which it had previously decided in *Bonel* v. *Covington* that, "the verdict," on a note payable in current notes, "must be for the value of the current notes in specie, at the time payment should have been made." 2 Smedes and Marshall's Rep. 495 The Supreme Court of this State, in the case of *Hunter* v. *Spurcock*, in delivering judgment on a note payable in cotton, held that it was proper to set out the note and the breach of the contract, to enable the plaintiff to recover the value of the note in damages. 3 La. 97.

The judgment of the court was pronounced by

Eustis, C. J.[*] This is an action brought on three promissory notes drawn by the defendants in favor of the plaintiff or order. They are the first of a series of twelve notes which, it is alleged, were given to the plaintiff in renewal of certain notes on which *Stark*, the only defendant before us, and another, were indebted to the Agricultural and to the Planters' banks in Mississippi. The banks assigned these notes to the plaintiff for the benefit of the assignees of the late United States Bank of Pennsylvania, to whom they were indebted. It is alleged that the transfer of those notes to the plaintiff was in violation of a statute of the State of Mississippi, and was consequently null and void, and gave no right of action to the plaintiff; and that the notes now sued on, being given in renewal of the original notes held by the banks, were not only without any good or sufficient consideration, but that the consideration was unlawful and against the public policy, and in direct violation of the statute, of Mississippi, where the whole transaction originated and was completed, and under whose laws the rights of the parties litigant must be determined. There was judgment for the plaintiff, and *Stark*, one of the defendants, has appealed. The case has been argued at bar on the grounds thus presented, and we proceed to consider them without any reference to any question which might arise as to the facts of the case, as authorising such a defence in this action.

The question which we are called upon to decide is, whether, with the consent of the debtor, the notes for which the notes sued on were given could be transferred by the bank which held them to the plaintiff, so as to create a legal obligation on the part of the debtor to discharge them, when thus transferred, in the hands of the assignee. The section of the act of the legislature of Mississippi which, it is said, destroys absolutely any right of transfer on the part of the bank, is in these words:

"*And be it further enacted, &c.*, That it shall not be lawful for any bank in

---

[*]Slidell, J., having been of counsel, did not sit on the trial of this case.

this State to transfer by endorsement or otherwise any note, bill receivable, or other evidence of debt; and, if it shall appear in evidence upon the trial of any action upon any such note, bill receivable, or other evidence of debt, that the same was so transferred, the same shall abate upon the plea of the defendant."

In the case of *Haslip* v. *Leggett*, 6 Smedes and Marshall's Rep. 327, it was held by the High Court of Errors and Appeals of Mississippi that, in an action against the maker of a note payable to a Bank, by the endorsee of the bank, the defence which this statute affords to the debtor could not be made under the plea of the general issue, but only be reached by a plea in abatement. The case of the *Planters' Bank* v. *Sharp* is referred to in the opinion of the court, and in that case Chief Justice Sharkey, in reference to this section of the statute, makes use of this language : "The language of the statute is very broad, it is true, but still we must look at its spirit and meaning. If the object of the legislature be apparent, it should be so construed as to accomplish that object, and there it should end." " I regard this provision not as a punishment on the bank, by compelling a forfeiture of its right of action, but as intended solely and exclusively for the benefit of bank debtors. Bank paper was then very much depreciated and the country was full of this depreciated currency, and it was designed to secure to debtors the right to pay the banks in their own notes. By allowing them to transfer their notes, debtors would have been compelled to pay the endorsees in the constitutional currency." 4 Ibid. 17. And in the case of the *Commercial Bank* v. *Thompson*, 7 Ibid. 448, the Chief Justice, in delivering the opinion of the court, says : "The act prohibiting the assignment of notes was intended for the benefit of the makers of the notes, and they may waive their right to insist upon it, if they will."

We think that the exposition of the policy of the State, and the construction thus given to the statute is not impugned by the opinion of the court delivered by the same judge in the case of *Robson* and *Allen* v. *The Benton and Manchester Railroad and Banking Co.* decided at the same term, Nov. 1846, 7 Ibid. 725.

The decisions appear to us to be conclusive on this point. The policy of the State is declared by its courts of the last resort, to have been the security of the right of debtors to pay their debts to the banks in their several notes, and to prevent a violation of that right, and the statute vests in the debtor the option of waiving or insisting on the privilege which it conferred, which was created for his benefit in furtherance of the public policy. The transfer of these notes does not place the party claiming under it, in the position of one to whom courts can give no assistance in enforcing his contract, as in cases of a plaintiff seeking to enforce an immoral or unlawful contract. The consideration of the notes sued on we, therefore, hold to be lawful and adequate. The notes sued on are in the form of promissory notes, with a reservation of a right to discharge them in the notes of the Bank of the United States. The judgment is in conformity therewith; and, as we conceive, in accordance with the true intent and import of tne notes.

<em>Judgment affirmed.</em>*

---

\* *Prentiss* and *Finney*, prayed for a re-hearing in this case. The judgment of the court below is erroneous in this : That it is a judgment for so much money, with the privilege of discharging the same in the notes of the Bank of the United States. Defendant contends that his contract did not authorise such a judgment, and that the only legal judgment which was warranted was a judgment for damages, which damages should have been the ascertained value of the United States Bank notes at the time of

the breach of the contract, to wit, the time when the notes respectively fell due. The contracts sued on are not obligations for the payment of money, either absolutely or in the alternative. They are simple obligations for the delivery, at certain periods, of a certain amount of United States Bank.notes. Upon a breach of these contracts, nothing but damages can be recovered, and the only legal criterion of damages is the value of the bank notes at the time of the breach. The obligations do not fix the value of the article to be delivered, and therefore it was incumbent on the plaintiff to prove their value at the trial, before he was entitled to a judgment at all.

First. The contracts sued on are to be construed, as to their meaning, extent, force, and obligation, by the laws of Mississippi, in which State they were executed and made payable.

Second. Construed by the laws of Mississippi, the contracts sued on are not obligations for the payment of money, either absolutely or in the alternative, but simple obligations for the payment or delivery of a certain enumerated amount of United States Bank notes ; they are not alternative obligations at all. This point is well settled by the following authorities : The first case in which the question is raised, is *Bonel* v. *Covington,* 7 Howard, 322, which was a suit on a promissory note " for $573, payable in the current notes of either of the banks of Natchez or of the Union Bank." Upon this point the court says, p. 327: " In determining that the plaintiff is entitled to the notes of the banks mentioned, that were current on the day the note sued on became due, we do not decide that he was entitled to claim the amount in specie. If there was any difference between the current notes of those banks, if there were any such, and specie, it may be estimated by the jury, and the defendants allowed the benefit of such difference. Their verdict must be for the value of the current notes in specie at the time payment should have been made." The next case in which the matter is discussed is in *Saunders* v. *Richardson,* 2 Smedes and Marshall, 90. In that case the defendant had given his note for so much money, absolutely. There was, however, a separate agreement contained in a deed between the parties that this note might be paid in bank notes of the different Mississippi banks. It was urged in argument that this case was similar to that of a note payable upon its face in bank notes, and therefore it was argued that the plaintiff could only recover the value of the bank paper at the time of the maturity of the note. The court, however, held that the cases were not similar; that the one before them was a contract to pay money, subject, however, to a defeasance, and that if the defendant did not take advantage of the defeasance by tendering the bank paper at the maturity of his note, then his contract to pay money became absolute. In explaining the difference between the case before the court, and a case of a note payable on its face in bank notes, Chief Justice Sharkey says, p. 105 : " Taking for the present the law to be as stated, we shall endeavor to draw the distinction between this contract and those which have given rise to the decisions cited. In cases of the description mentioned, the essence of the agreement was the thing to be paid. By common consent, bank notes have been substituted as currency. They are necessarily liable to great fluctuation in value, and a note payable in such currency bears a striking analogy to an agreement to pay any other specific article. The extent of the obligation is the thing agreed to be paid ; such contracts cannot be interpreted so as to enlarge the obligation. A failure to perform entitles the plaintiff to recover the value only, as equivalent to what he would have received on voluntary payment. The extent of the liability or undertaking is limited by the terms of the obligation. But this is not a note for so much payable in a certain description of currency," &c.

This view of the Mississippi court is conclusive as to the true construction of a note payable on its face in bank paper. These are notes " for so much payable in a certain description of currency." " The extent of the obligation is the thing agreed to be paid." The obligee can only call for that thing; " a failure to perform entitles the plaintiff to recover the value only." Now, what is the thing agreed here to be paid? They are " notes for so much payable in a certain description of currency, viz: United States Bank notes ! What does the failure to perform entitle the plaintiff to recover ? " The value only," says Chief Justice Sharkey. But the court below, in the present case says, if the defendant will not perform his obligation to pay United States Bank notes, the plaintiff shall be entitled to recover, not the value only, but the same amount, in good money. What right had the court below to attach to the breach of the contract a greater penalty than the law attaches to it ? But we will cite an additional case to show that this question is no longer a matter of argument in Mississippi. In the case of *Gordon* v. *Parker,* 2 Smedes and Marshall, 485, suit was instituted on the following note :

" $5,000. Due *George S. Smith* or bearer, five thousand dollars, payable in Brandon money. Jackson, January 26, 1839.                N. C. GORDON."

This obligation is in all respects similar to those under consideration. There is no difference whatever in the construction or force of the two contracts. This court then would (according to the opinion implied in its affirmance of the judgment below) construe the contract above cited as an alternative obligation, and say that a judgment for $5,000 in constitutional currency, with the privilege of discharging it by the payment of

ROBERTS
v.
STARK.

$5,000 in Brandon money, would be a valid judgment, and in accordance with the terms of the contract. But such is not the construction put upon it by the laws of Mississippi. After a very elaborate argument at bar, the court construe the obligation thus, p. 495, of the volume cited: "The declaration contained an averment that the term Brandon money meant the notes of the Mississippi and Alabama Railroad Company, at Brandon, Mississippi. The defendant below requested the court to charge the jury that the measure of damages in the case was, the specie value of the Brandon Bank paper at the maturity of the due bill, with interest, &c. The contract was to pay in a certain species of bank notes, and their value at the time of the date of the due bill should have been ascertained by the assessment of the jury, with interest. This was so decided by this court in the case of *Bonel* v. *Covington*." Now the Supreme Court of Mississippi say. " the contract was to pay in a certain species of bank notes; in other words, that it was a simple and single obligation to pay a certain thing, at a certain time, and that the only penalty of non-payment is the value of the thing at that time. This court says that a similar obligation is an alternative one, and that the penalty for not paying the United States Bank notes is, not their real specie value, but their full nominal amount in good money. Even should this court believe its own construction correct, yet it is respectfully urged that the law of Mississippi, not that of Louisiana, must govern the interpretation of this contract.

According to the present judgment it is true the defendant has still the privilege of paying in United States Bank notes, but what we complain of is that the judgment inflicts upon him, in case of non-payment, the penalty of the full nominal amount in good money. Now we have attempted to show that, by law, the only penalty of non-payment of the bank notes, is their value in specie at the time they should have been paid according to the terms of the contract. But there is another mode of testing the correctness of this judgment; if it be a valid judgment and in accordance with the true meaning of the contract, then it is equally binding upon the plaintiff as the defendant. The facts of this case, upon which we resist the judgment, are, that United States Bank notes at the maturity of the obligations sued on were worth only forty or fifty cents in the dollar. This is the true criterion of damages suffered by non-payment. At present these notes have appreciated to eighty or eighty-five cents in the dollar. But suppose, on the other hand, the notes had depreciated and were worth now only five cents in the dollar, would the plaintiff be bound to take them, when at the maturity of the obligation they were worth fifty cents in the dollar? It seems clear he would not. He would have been entitled, in damages, to the value at that time, and could not be compelled to take them in present satisfaction. This has been directly decided in Mississippi in the case of *Lanier* v. *Trigg*, 6 Smedes and Marshall, 641. The note sued on in that case had belonged to the Hernando Bank, and under the law of Mississippi was payable, even in the hands of an assignee, in the notes of that bank. The defendant pleaded a tender of Hernando Bank bills, made long after the maturity of the notes, but the court decided that the tender was not good, and gave the following reasons, p. 645: " The plaintiffs were entitled to the Hernando Bank bills, taking the plea to be true, on the day the obligation became payable. The same nominal amount, six months afterwards, in such bills, might be of much less value. In an action of covenant of this kind the measure of damages must be the value of the article at the time of the breach, not its value six months afterwards. The rights of the parties became fixed on that day." Plaintiff's counsel has suggested in his brief that this judgment, though it would not be good in Mississippi, is still good in Louisiana under our practice. We admit that the remedy is local, but this is not a question of remedy. It is a question as to the meaning and construction of a Mississippi contract; to solve this question we must appeal to Mississippi law.                     *Re-hearing refused.*